**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-24530-RAR**

**SHANIECE WILLIAMS**, *et al.*,

      Plaintiffs,

v.

**MIAMI-DADE COUNTY**, *et al*.,

      Defendants.

_____/

**<u>ORDER ON MOTIONS TO DISMISS</u>**

The Fourth Amendment protects against the government's use of excessive force during the course of a search or seizure.  Accordingly, the Supreme Court has held "the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  This case concerns the propriety of a Miami-Dade County police officer's alleged use of deadly force to seize a fleeing felony suspect—deadly force that ultimately caused serious harm to uninvolved bystanders.  Before the Court are Plaintiffs' Complaint ("Complaint"), [ECF No. 1]; Defendant Officer Juan Rodriguez's Corrected Motion to Dismiss Complaint ("Rodriguez MTD"), [ECF No. 13]; and Miami-Dade County's Motion to Dismiss Counts II and III of the Complaint ("County MTD"), [ECF No. 15] (collectively, "Motions").[1]  Having considered Defendants' Motions, the record, and being otherwise fully advised, it is hereby

      **ORDERED AND ADJUDGED** that the County's MTD, [ECF No. 15], is **GRANTED** and Officer Rodriguez's MTD, [ECF No. 13], is **DENIED** as set forth herein.

---

[1] The Motions are fully briefed and ripe for adjudication.  *See* Pls.' Consolidated Resp. in Opp'n to Defs.' Mots. to Dismiss Am. Compl. ("Response"), [ECF No. 18]; Def. Rodriguez's Reply ("Rodriguez Reply"), [ECF No. 20]; Def. Miami-Dade Cty's Reply ("County Reply"), [ECF No. 21].

**BACKGROUND**

On December 4, 2019, Plaintiffs Shaniece Williams, Sherry Thompson, and William Allen drove together in Thompson's car to pick up dinner at a restaurant called "Wings on Fire" located at the intersection of Northwest 66th Street and Northwest 22nd Avenue in Miami, Florida. *See* Compl. ¶¶ 12–13. Thompson drove while Williams sat in the front passenger seat and Allen sat in the rear passenger seat. Compl. ¶ 14. Upon arriving, Plaintiffs, still in their car, proceeded to the restaurant's drive-through to order food. *See* Compl. ¶ 15.

As this was happening, Defendant Officer Juan Rodriguez of the Miami-Dade County Police Department was attempting to conduct a traffic stop of a suspect on a motorized scooter at the same intersection. Compl. ¶17. During the traffic stop, the suspect and Officer Rodriguez began shooting at one another. Compl. ¶ 18. Up until this point, no gunfire had been directed at or near Plaintiffs or their car. Compl. ¶ 19. But the suspect then began running away from Officer Rodriguez towards the Wings on Fire drive-through. Compl. ¶ 20. Officer Rodriguez, meanwhile, positioned himself in the middle of Northwest 66th Street. Compl. ¶ 21. The suspect approached Plaintiffs' car, which was stationary in the drive-through, and attempted to enter the vehicle. Compl. ¶¶ 22–24. Plaintiffs did not allow the suspect to enter the vehicle. Compl. ¶ 25.

Upon failing to enter Plaintiffs' car, the suspect began leaving the vicinity. Compl. ¶¶ 26–27. Nonetheless, Officer Rodriguez began shooting at Plaintiffs' car, even though he knew or should have known that the car was only occupied by innocent bystanders. *See* Compl. ¶¶ 26–29. Indeed, bullets from Officer Rodriguez's gun first struck the car while it idled in the drive-through. Compl. ¶ 26. In response to this gunfire, Thompson, the driver—fearing for her and the other Plaintiffs' lives—drove the car out of the drive-through and turned southbound onto Northwest 22nd Ave. *See* Compl. ¶ 30. Even as Plaintiffs fled, Officer Rodriguez continued to shoot at the car—striking it with more bullets—despite it posing no threat. Compl. ¶¶ 31–32. Officer

Rodriguez continued firing at Plaintiffs' car as it headed southbound, away from the restaurant, striking it with more bullets—some of which struck Williams in the back and left shoulder, and some of which shattered the car's back window, causing glass to fall on Allen. *See* Compl. ¶¶ 33–37. Plaintiffs also claim these gunshots caused each of them to fear for their own lives and for the lives of each other. Compl. ¶ 38.

After finally escaping the gunfire, Plaintiffs stopped the car to seek emergency assistance. Compl. ¶ 41. When police arrived at the scene, they handcuffed and detained Allen. Compl. ¶ 42. Williams, who had been shot, was taken to the hospital for treatment. *See* Compl. ¶ 43. She was hospitalized because of the shooting and suffered serious physical pain—pain which is ongoing and may require additional medical treatment in the future. Compl. ¶¶ 43, 44, 58a. Allen, Williams, and Thompson all claim to have suffered and to continue to suffer severe mental anguish, stress, fear, and anxiety from these events and have received treatment for these issues; they also claim to have suffered and/or continue to suffer loss of earnings and/or loss of future earning capacity. Compl. ¶¶ 46, 58b, 58c.

Based on the foregoing allegations, the Complaint alleges that Officer Rodriguez was acting under color of law and used unnecessary, inappropriate, and excessive force when he intentionally fired his gun multiple times at Plaintiffs' car, both while stationary and as it fled— actions which caused injuries to Plaintiffs. *See* Compl. ¶¶ 52–55. Plaintiffs further aver that this use of force was not objectively reasonable under the circumstances. Compl. ¶ 56. Plaintiffs claim that the Miami-Dade County Police Department ("MDPD") continued to employ Officer Rodriguez without interruption following the shooting, and in August 2021, as apparent punishment for the shooting, MDPD suspended Officer Rodriguez for just 30 days. Compl. ¶ 47.

The Complaint sets forth three counts. Count I advances an excessive-force claim under the Fourth Amendment against Officer Rodriguez in his individual capacity pursuant to 42 U.S.C.

§ 1983.  Count II alleges what appears to be either a general-negligence or negligent-use-of-excessive-force claim against the County.  Count III asserts an assault-and-battery tort claim against the County.  Defendant Officer Rodriguez moves to dismiss Count I, arguing that Plaintiffs have not adequately stated a claim against him under § 1983—and even if they did, he is entitled to qualified immunity.  Rodriguez MTD at 3–8.  Defendant Miami-Dade County separately moves to dismiss Counts II and III, arguing that Count II attempts to state an incognizable negligent-use-of-excessive-force claim, and the County is entitled to sovereign immunity as to both Counts II and III.  County MTD at 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim," but a complaint must set forth more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In addition to accepting the complaint's allegations as true, the court must draw all inferences in the plaintiff's favor when determining if a complaint states a claim to relief.  *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).  But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and need not accept as true allegations that are "more conclusory than factual."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

A claim to relief is plausible where the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The requirement that a claim be plausible does not require that it be

probable, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*
Allegations that are "merely consistent with" the defendant's liability are not enough. *See*
*Twombly*, 550 U.S. at 557. Ultimately, "determining whether a complaint states a plausible claim
for relief is a context-specific task that requires the reviewing court to draw on its judicial
experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022)
(alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

As noted above, both the County and Officer Rodriguez have each filed separate Motions
to Dismiss the respective claims against them. *See* [ECF Nos. 13, 15]. Officer Rodriguez moves
to dismiss Count I and includes argument for dismissal of Counts II and III to the extent the Court
construes Counts II and III as applying to Officer Rodriguez in addition to the County. *See*
*generally* Rodriguez MTD. The County moves to dismiss Counts II and III as the only counts
brought against it. Accordingly, taken together, the Motions move to dismiss the entire Complaint.

The Court construes Count I to only encompass Officer Rodriguez and Counts II and III to
only encompass the County.[2] As explained herein, Count I states an excessive-force claim under
§ 1983, and Officer Rodriguez's qualified immunity defense fails at this stage. Accordingly, Count
I survives dismissal. As for Counts II and III, sovereign immunity shields the County from
liability. Separately, Count II fails to state a claim as currently pleaded. Accordingly, Counts II
and III are dismissed without prejudice and with leave to amend. The Court addresses each Count
in turn.

### I. Count I – Fourth Amendment Excessive-Force Claim Under 42 U.S.C. § 1983

Section 1983 provides a private right of action against "[e]very person who," acting under

---

[2] The Court arrives at this conclusion based upon the Complaint's section headings for each of its three
counts. The section headings reference only Officer Rodriguez in Count I and only the County in Counts
II and III. *See generally*, Compl.

color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"  42 U.S.C. § 1983.

The Fourth Amendment provides that the government shall not violate "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  U.S. CONST. amend. IV; *see also Torres v. Madrid,* 592 U.S. 306, 314 (2021) ("[T]he Fourteenth Amendment . . . incorporated the protections of the Fourth Amendment against the States.").  This includes the right to be free from the use of excessive force during an "arrest, investigatory stop, or other 'seizure[.]'"  *Corbitt v. Vickers*, 929 F.3d 1304, 1313 (11th Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989).  A Fourth Amendment excessive-force claim requires "(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."  *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1166 (11th Cir. 2005).  Even still, "[q]ualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action."  *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  In other words, "[courts] are required to grant qualified immunity to a defendant official unless the plaintiff can demonstrate two things: (1) that the alleged facts indicate that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct."  *See Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015) (quoting *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009)).

Officer Rodriguez argues that Count I must be dismissed because (A) Plaintiffs Allen and Thompson lack standing; (B) Plaintiffs have not established a constitutional violation and have thus failed to state a § 1983 claim; and (C) Officer Rodriguez is entitled to the defense of qualified

immunity.   Rodriguez MTD at 3–10.   As explained below, the Court rejects each of these arguments.

### A.   *Plaintiffs Adequately Plead Article III Standing*[3]

Officer Rodriguez maintains that Plaintiffs Allen and Thompson lack standing as to their § 1983 excessive-force claim.   Specifically, Officer Rodriguez argues that they have not satisfied the injury-in-fact requirement and instead characterizes Allen and Thompson as "concerned bystanders."   Rodriguez MTD at 7.   This argument plainly fails.

"Courts have jurisdiction to hear a case only when the plaintiff has standing to sue." *Baughcum v. Jackson*, 92 F.4th 1024, 1030–31 (11th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   "To have standing, an individual plaintiff must have suffered an injury in fact, fairly traceable to the defendant, that the court can redress with an order directed at the defendant."   *Id.* at 1031 (citing *Lujan*, 504 U.S. at 560–61).   As to the injury-in-fact prong, "[a]n injury in fact must be concrete and particularized and actual or imminent, rather than conjectural or hypothetical."   *Id.* (citing *Lujan*, 504 U.S. at 560).   "A concrete injury is one that 'actually exist[s]' and is 'real' rather than 'abstract.'"   *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).   "A particularized injury is one that 'affect[s] the plaintiff in a personal and individual way.'"   *Id.* (quoting *Spokeo*, 578 U.S. at 339).   "An actual or imminent injury, unlike a conjectural or hypothetical one, is one which has occurred, is certainly impending, or has substantial risk of occurring."   *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Relatedly, the Eleventh Circuit has explained that, in addition to compensatory damages for physical pain and suffering related to a defendant's excessive use of force under § 1983, a plaintiff may also be "awarded compensatory damages based on demonstrated mental and

---

[3]   The Court only addresses Officer Rodriguez's standing arguments related to Plaintiffs' § 1983 claim because it does not construe Counts II and III to include Officer Rodriguez.

emotional distress, impairment of reputation, and personal humiliation." *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) (citing *Wright v. Sheppard,* 919 F.2d 665, 669 (11th Cir. 1990)); *see also Benton v. Rousseau*, 940 F. Supp. 2d 1370, 1379 (M.D. Fla. 2013) (awarding prisoner compensatory damages for emotional distress, mental anguish, and humiliation pursuant to an excessive-force claim under § 1983). And the Eleventh Circuit has further held that, in the context of excessive-force claims, "a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he [or she] suffered no compensable injury." *Id.* (collecting cases).

Applying the above principles here, the Complaint adequately alleges injury-in-fact as to all three Plaintiffs. As a threshold matter, Officer Rodriguez appears to concede that Plaintiff Williams has standing by specifically arguing that only Plaintiffs Allen and Thompson did not suffer an injury-in-fact. *See* Rodriguez MTD at 3–7. And Officer Rodriguez's injury-in-fact argument as to Plaintiffs Allen and Thompson seems to be that, because neither of them was *actually* shot, they have accordingly failed to establish an injury-in-fact and were instead only "concerned bystanders." *Id*. at 7. But Plaintiffs need not show a *physical* injury to establish injury-in-fact in this context. To the contrary—an injury need only be real and actual rather than conjectural or hypothetical. *See Baughcum*, 92 F.4th at 1031. And the Complaint includes more than enough allegations to ground the reasonable inference that both Allen and Thompson suffered real and actual injuries even if they were not physical ones.

For one, all Plaintiffs allege they were in the car that Officer Rodriguez shot at multiple times, even as they fled. Compl. ¶¶ 26–35. All Plaintiffs allege they were put in reasonable apprehension of imminent harmful or offensive contact. Compl. ¶ 38. And all Plaintiffs claim to have suffered and to continue to suffer mental and emotional distress from the episode. Compl. ¶¶ 46, 58. Moreover, Thompson owned the car that was shot, Compl. ¶ 12, and shattered glass fell on Allen, Compl. ¶ 37. Accordingly, Thompson and Allen cannot be characterized as merely

"concerned bystanders." Each of them has plainly alleged facts sufficient to establish the injury-in-fact requirement of Article III standing for purposes of Plaintiffs' excessive-force claim. *See McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1240–41 (S.D. Fla. 2020) (citing *Meese v. Keene*, 481 U.S. 465, 472–476 (1987)) (concluding plaintiffs had satisfied the injury-in-fact requirement of Article III standing because plaintiffs' allegations of reputational, emotional, and psychological injuries were compensable injuries under § 1983 for violations of constitutional rights).

### B. Plaintiffs Adequately Plead an Excessive Force Claim Under § 1983

An excessive-force claim under § 1983 requires "(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Troupe*, 419 F.3d at 1166; *see also Torres*, 592 U.S. at 325 ("The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones."). Officer Rodriguez posits that Plaintiffs Allen and Thompson have not adequately alleged their constitutional rights were violated as required to state a claim under § 1983. *See* Rodriguez MTD at 3–7. However, each Plaintiff has met the aforementioned pleading requirements.

### 1. Plaintiffs Adequately Plead They Were Seized

"A seizure occurs whenever the police 'restrain the freedom of a person to walk away.'" *AFL-CIO v. City of Miami, FL*, 637 F.3d 1178, 1191 (11th Cir. 2011) (alteration accepted) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 595 (1989)). "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Garner*, 471 U.S. at 7. To determine if a seizure has occurred, a court must evaluate whether "'a reasonable person would have believed that he was not free to leave.'" *See Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 822 (11th Cir. 2017) (quoting *United States v.*

*Mendenhall*, 446 U.S. 544, 554 (1980)).  Generally, "[a] seizure requires the use of force *with intent to restrain*, as opposed to force applied by accident or for some other purpose."  *Torres*, 592 U.S. at 307 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).  Nonetheless, courts must remain cognizant that not "every physical contact between a government employee and a member of the public" is a seizure.  *See id.* at 317.  But as the Supreme Court clarified in *Torres*, "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued."  592 U.S. at 325.  Thus, "[t]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain[.]"  *Id.* at 307 (citing *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988)).

Here, each Plaintiff has sufficiently alleged that he or she was seized within the meaning of the Fourth Amendment.  Specifically, the Complaint alleges that, from the time the suspect tried to enter the car and afterward, he was no longer shooting at Officer Rodriguez or threatening him, and Officer Rodriguez knew or should have known that the car was only occupied by innocent bystanders.  Compl. ¶¶ 28–29.  Plaintiffs further allege that, after the suspect tried unsuccessfully to enter the car, Officer Rodriguez fired multiple shots at the car and continued firing even as they fled southbound away from the scene.  Compl. ¶¶ 26–39.  As for Allen and Thompson, who were not physically shot, the Complaint alleges they were both inside Thompson's car with Williams, who was shot, while Officer Rodriguez was shooting at the car.  Compl. ¶¶ 26–39.  And after Plaintiffs stopped the car for emergency assistance, police handcuffed and detained Allen without any apparent probable cause.  Compl. ¶ 42.  Thus, by willfully continuing to shoot at the car in which Plaintiffs were riding—and striking it with bullets both while it idled and as it fled—Officer Rodriguez's "conduct *objectively* manifest[ed] an intent to restrain[]" all three Plaintiffs.  *See Torres*, 592 U.S. at 317 (finding a Fourth Amendment seizure had occurred when officers attempting to execute an arrest warrant fired weapons at plaintiff's vehicle, striking her and the

vehicle as she fled and concluding "the officers' shooting applied physical force to her body and objectively manifested an intent to restrain her from driving away" even though she did not stop); *Carr v. Tatangelo*, 338 F.3d 1259, 1268 (11th Cir. 2003), *as amended* (Sept. 29, 2003) ("Although Carr was not immediately stopped by the bullet from Officer Fortson's gun, he nevertheless was seized within the meaning of the Fourth Amendment when the bullet struck or contacted him." (citing *Menuel v. City of Atlanta*, 25 F.3d 990, 996 (11th Cir. 1994))).

Officer Rodriguez appears to argue that Plaintiffs Allen and Thompson were not subjected to a seizure within the meaning of the Fourth Amendment because they were not physically restricted nor shot. Rodriguez MTD at 6. Specifically, Officer Rodriguez maintains that Plaintiffs must allege he "intentionally committed acts that violated their constitutional right not to be subjected to excessive or unreasonable force either during an arrest or while being held in custody as a pretrial detainee" and "[]Allen and []Thompson have set forth no facts showing that either of them have or were confronted with an arrest, a detention, or a search and seizure at the time of the shooting." *Id.* at 5–6.

But that is not the law. In *Torres*, the Supreme Court addressed and rejected a nearly identical argument. *See* 592 U.S. at 321–22 (rejecting argument that a seizure requires an intentional acquisition of physical control and the corollary that a use of force becomes a seizure only when there is a governmental termination of freedom of movement through means intentionally applied). As Plaintiffs rightly point out, "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued[,]" Resp. at 5, because "[t]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain[.]" *Torres*, 592 U.S. at 307, 325. Here, Officer Rodriguez's intentional shooting at Plaintiffs' car over a sustained period of time objectively

manifested his intent to restrain Plaintiffs, thereby constituting a seizure within the meaning of the Fourth Amendment. *Id.*

## 2. Plaintiffs Adequately Plead the Seizures Were Unreasonable

"Of course, a seizure is just the first step in the analysis. The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones." *Id.* at 325. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). "In determining the reasonableness of the force applied, [courts] look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Id.* (quoting *McCullough,* 559 F.3d at 1206).

"In excessive force cases, [courts are to be] mindful that officers make split-second decisions in tough and tense situations." *Morton*, 707 F.3d at 1281 (citing *Jean–Baptiste v. Gutierrez,* 627 F.3d 816, 820 (11th Cir. 2010)). "Reasonableness in this context depends on all the circumstances relevant to an officer's decision to use force and the amount of force used." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) (citing *Jean–Baptiste,* 627 F.3d at 821). Thus, "[i]n deciding whether a police officer used excessive force, [courts must] pay 'careful attention to the facts and circumstances' of the case, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Morton*, 707 F.3d at 1281 (quoting *Graham,* 490 U.S. at 396).

"As to deadly force, a police officer may use such force to dispel a threat of serious physical harm to either the officer or others, or to prevent the escape of a suspect who threatens this harm." *Singletary*, 804 F.3d at 1181 (citing *McCullough,* 559 F.3d at 1206; *Morton*, 707 F.3d at 1283) (agreeing with district court's conclusion that officer-defendant's decision to fire shots at moving car driven by suspect that ultimately struck passenger-plaintiff would not have been a reasonable use of deadly force had suspect merely been trying to escape the scene and concluding "the use of deadly force to stop a perceived escape attempt would have been excessive."). The Eleventh Circuit has further observed that a police officer may constitutionally use deadly force when the officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

*Morton*, 707 F.3d at 1281 (cleaned up) (citing *McCullough*, 559 F.3d at 1206). But although the above "factors are useful, courts cannot apply them mechanically[.]" *Id.* (citing *Penley v. Eslinger*, 605 F.3d 843, 849–50 (11th Cir. 2010)). Courts "must still slosh [their] way through the factbound morass of 'reasonableness[.]'" *Id.* (quoting *Scott v. Harris,* 550 U.S. 372, 383 (2007)).

Upon applying the above principles to the Complaint's allegations, the Court concludes that Officer Rodriguez's use of deadly force was excessive under these factual circumstances and was accordingly unreasonable. Specifically, accepting the Complaint's allegations as true and drawing all inferences in Plaintiffs' favor, the Court concludes that Officer Rodriguez's intentional firing of multiple shots at Plaintiffs' vehicle—both as it idled and as it drove away—exhibited willful and wanton disregard for human safety and property and constituted precisely the kind of unreasonableness the Fourth Amendment proscribes.

Several key allegations in the Complaint compel this conclusion, some of which the Court has already noted above. First, Plaintiffs allege that Officer Rodriguez had no reason to suspect any Plaintiff of a crime, let alone a serious one. Compl. ¶ 29. Second, Plaintiffs allege that by the time Officer Rodriguez began shooting at the vehicle, the shootout between Officer Rodriguez and the suspect had concluded, and the suspect had already tried and failed to gain entry to their vehicle. Compl. ¶¶ 18–29. Third, the Complaint alleges that by the time Officer Rodriguez began firing shots at the vehicle—and striking it with bullets—the suspect was already leaving the vicinity and no longer posed a threat to either Officer Rodriguez or Plaintiffs. Compl. ¶¶ 24–28. And fourth, Plaintiffs allege that even after they attempted to flee Officer Rodriguez's gunfire by driving southbound away from the scene, Officer Rodriguez continued shooting at their vehicle with no apparent, reasonable basis to believe (1) that Plaintiffs were involved in a crime or posed a threat to Officer Rodriguez; (2) that the suspect was inside the vehicle; or (3) that the suspect was otherwise posing a continuing threat to either Officer Rodriguez or any of the Plaintiffs. Compl. ¶¶ 30–39.

These allegations are more than sufficient to support the reasonable inference that Officer Rodriguez's use of deadly force amounted to willful and wanton disregard for human safety and property constituting the unreasonable seizure of Plaintiffs. *See Morton*, 707 F.3d at 1281–82 ("To begin with, Kirkwood had no probable cause to believe Morton committed any crime, let alone a serious crime involving the infliction or threatened infliction of serious physical harm. Nor did he have reason to believe that Morton was a threat to anyone. (citations omitted)). Thus, by sufficiently alleging "(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable," *Troupe*, 419 F.3d at 1166, Plaintiffs have adequately pleaded both elements of a § 1983 excessive-force claim.

### C.  *Officer Rodriguez's Qualified Immunity Defense Fails at the Pleading Stage*

There is, however, one remaining obstacle Plaintiffs must overcome if their excessive-force claim is to survive dismissal.  Officer Rodriguez argues that, even if Plaintiffs have stated an excessive-force claim under § 1983, qualified immunity nonetheless shields him from liability as a matter of law.  *See* Rodriguez MTD at 8–10.  But for the reasons that follow, Officer Rodriguez's qualified immunity defense is premature and thus fails.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action."  *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  "Qualified immunity balances two important interests: the need to hold accountable a public official who has irresponsibly exercised his power and the obligation to protect from liability an official who has reasonably performed his duties."  *Singletary*, 804 F.3d at 1180 (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

"In order to receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "After the defendant has established that he was acting in a discretionary capacity, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'"  *Id*. (citing *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015)).  To meet this burden, a plaintiff must establish that (1) his complaint pleads a plausible claim that the defendant violated statutory or constitutional federal rights and (2) the law at the time of the alleged acts clearly established the unlawfulness or unconstitutionality of the conduct at issue.  *Id*. (collecting cases).  Accordingly, a court should dismiss a complaint "on qualified immunity grounds when the

'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

While "the defense of qualified immunity is typically addressed at the summary judgment stage," a defendant may also raise it in a motion to dismiss. *St. George*, 285 F.3d at 1337. Thus, to defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated plaintiffs' federal rights and those rights were clearly established. *See Carollo*, 833 F.3d at 1328; *see also Reed v. Clough*, 694 F. App'x 716, 720 (11th Cir. 2017) (citing *Morris v. Town of Lexington, Ala.*, 748 F.3d 1316, 1322 (11th Cir. 2014)).

### 1. Plaintiffs Adequately Plead Violations of Fourth Amendment Rights

As discussed above, *supra* at 9–15, Plaintiffs have adequately pleaded Officer Rodriguez unlawfully seized Plaintiffs and violated their right to be free from the use of excessive force under the Fourth Amendment.[4] Accordingly, the Court proceeds to address whether the law at the time of the shooting "clearly established" the unconstitutionality of Officer Rodriguez's conduct.

### 2. Plaintiffs' Fourth Amendment Rights Were Clearly Established

"To be clearly established, the contours of a right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it.'" *Singletary*, 804 F.3d at 1184 (citing *Plumhoff v. Rickard*, 572 U.S. 765, 778–779 (2014)). "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the [official] that [his] alleged conduct was unconstitutional." *Tolan v. Cotton*, 572

---

[4] The Court notes that Plaintiffs' excessive-force claim here constitutes a so-called "genuine" excessive force claim rather than an "artificial" one. *See Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) ("We have contrasted such 'genuine' excessive force claims with artificial claims—unlike Richmond's claim in this case—that an officer's use of force is excessive only because an arrest was not supported by probable cause. A genuine excessive force claim, we have explained, is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation, such as a false arrest. Instead, it is a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force." (internal citations and quotation marks omitted)).

U.S. 650, 656 (2014) (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). "To answer this question, we look to law as decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (alteration accepted) (citing *Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012)). The facts of existing caselaw do not need to be identical to the plaintiff's case, "but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

There are three ways a plaintiff may show that the right violated was clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

Under the first method, the plaintiff "may show that a materially similar case has already been decided." *Loftus*, 690 F.3d at 1204 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)). "To assess 'whether previous cases clearly establish the law under the materially similar inquiry, we ask whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case.'" *Id.* (citing *Terrell*, 668 F.3d at 1256). Under the second method, the plaintiff may demonstrate that "a broader, clearly established principle should control the novel facts in this situation." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "The principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus*, 690 F.3d at 1205 (alterations accepted) (quoting *Terrell*, 668 F.3d at 1256). "In other words, 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Terrell*, 668 F.3d

at 1256).  And under the third method, the plaintiff can show that "this case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (alteration accepted) (quoting *Mercado*, 407 F.3d at 1159).  "This 'narrow' category encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1257).

Here, Plaintiffs have demonstrated that their Fourth Amendment rights were clearly established under the second method.  Specifically, Plaintiffs have demonstrated "a broader, clearly established principle should control the novel facts in this situation." *Mercado*, 407 F.3d at 1159.  For example, in their Complaint, Plaintiffs point to the Fourth Amendment's protections against unreasonable, excessive force during the course of an arrest, investigatory stop, or other seizure.  *See* Compl. ¶¶ 49–56.  In their Response, Plaintiffs further specify that the clearly established principle articulated in *Tennessee v. Garner*, 471 U.S. 1 (1985) controls this case. Resp. at 8.  The Court agrees.

A review of relevant Supreme Court and Eleventh Circuit precedent confirms the conclusion that Plaintiffs' "Fourth Amendment right to be free from the use of deadly force was clearly established well before" the night Officer Rodriguez is alleged to have shot at them.  *See Morton*, 707 F.3d at 1282 (citing *Garner*, 471 U.S. at 3–4).  In *Garner*, a police officer shot and killed an unarmed burglar after he had robbed an unoccupied house and was attempting to escape. 471 U.S. at 3–4.  In determining the police had violated the burglar's right to be free from unreasonable seizure, the Supreme Court held:

> The use of deadly force to prevent the escape of all felony suspects,
> whatever the circumstances, is constitutionally unreasonable. It is

> not better that all felony suspects die than that they escape. Where
> the suspect poses no immediate threat to the officer and no threat to
> others, the harm resulting from failing to apprehend him does not
> justify the use of deadly force to do so . . . . A police officer may not
> seize an unarmed, nondangerous suspect by shooting him dead.

*Id.* at 11. "That being said, the Supreme Court [has also] recognized that the use of deadly force

is not always unconstitutional." *Morton*, 707 F.3d at 1283. "Thus, for example, an officer might

reasonably use deadly force to prevent escape where he has probable cause to believe that the

suspect might cause serious physical harm to police officers or bystanders." *Id.* (citing *Garner*,

471 U.S. at 11). Accordingly, in the deadly force context, the Eleventh Circuit has observed that

a police officer may constitutionally use deadly force when the officer:

> (1) has probable cause to believe that the suspect poses a threat of
> serious physical harm, either to the officer or to others or that he has
> committed a crime involving the infliction or threatened infliction
> of serious physical harm; (2) reasonably believes that the use of
> deadly force was necessary to prevent escape; and (3) has given
> some warning about the possible use of deadly force, if feasible.

*Id.* at 1281 (citing *McCullough*, 559 F.3d at 1206).

The Eleventh Circuit has applied the holding in *Garner* to more than one similar situation

involving vehicles and officers' use of deadly force. For example, in *Vaughan v. Cox*, officers

were chasing a truck they suspected was stolen. 343 F.3d 1323, 1326 (11th Cir. 2003). The driver

refused to stop the truck and yield to police, and the relevant facts further indicated the driver was

not driving recklessly nor putting the pursuing officers' or other drivers' safety at risk. *See*

*generally id.* Eventually, officers shot at the truck multiple times, and in doing so, unintentionally

paralyzed the plaintiff, who happened to be a passenger in the truck. *Id.* at 1326–27. Plaintiff sued

the police officer who shot him, and the Eleventh Circuit ultimately concluded that "a reasonable

jury could find, under [the plaintiff's] version of the facts, that [the] . . . use of deadly force to

apprehend [the plaintiff] was unconstitutional," because "[g]enuine issues of material fact

remain[ed] as to whether [the truck's] flight presented an immediate threat of serious harm . . . at

the time [the officer] fired the shot." *Id.* at 1330. Critically, the *Vaughan* Court, relying on *Garner*, also determined that the plaintiff's constitutional right to be free from an officer's excessive use of force was clearly established at the time of the incident. *Id.* at 1332 ("Taking the facts as alleged by Vaughan, an objectively reasonable officer in Deputy Cox's position could not have believed that he was entitled to use deadly force to apprehend Vaughan and Rayson. Under *Garner*, a police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect only when the suspect poses an immediate threat of serious harm to police officers or others.").

Similarly, in *Morton v. Kirkwood*, the plaintiff was sitting in his car when a police officer shot him—which again paralyzed the plaintiff. 707 F.3d at 1279. According to the officer's version of events, he shot plaintiff after plaintiff had "accelerated his car and threatened the life of a nearby police officer." *Id.* But according to the plaintiff's version of events, he never accelerated his car, and the officer "nonetheless shot him seven times after he put his car in park." *Id.* Plaintiff subsequently sued the officer under § 1983, alleging that he used excessive force in violation of the Fourth Amendment. *Id.* The district court ultimately denied the officer's motion for summary judgment on qualified immunity grounds, and the officer subsequently appealed. *Id.* at 1280.

The Eleventh Circuit affirmed the district court's denial of summary judgment, concluding that "no reasonable police officer would have used deadly force against [plaintiff]." *Id.* at 1279. And, as in *Vaughan*, the Eleventh Circuit applied the broader, clearly established principle in *Garner* to determine that the officer had violated the plaintiff's clearly established constitutional rights:

> Like *Garner,* then, *Vaughan* gave fair warning that the use of deadly force against a non-resisting suspect who posed no danger violates a suspect's Fourth Amendment right to be free from excessive force. While the facts of neither *Vaughan* nor *Garner* exactly match the facts here, Morton presented *less* of a safety and flight risk than the driver in *Vaughan* or the suspect in *Garner*. The truck in *Vaughan* was speeding on a highway; Morton's car was parked. In *Vaughan,* the driver refused to stop when the police ordered him to do so;

> Morton immediately raised his hands when he heard Officer
> Kirkwood shout. In *Vaughan,* the driver was suspected of car theft;
> Morton was suspected of no crime. And in *Garner* a criminal
> suspect sought to flee, whereas Morton did not flee and was not
> suspected of a crime. "[I]n the light of pre-existing law," here
> *Garner* and *Vaughan,* "the unlawfulness" of Kirkwood's alleged
> actions was "apparent," and so qualified immunity does not apply.

*Id.* at 1283–84 (citing *Terrell,* 668 F.3d at 1256).

The Court arrives at the same conclusion here as the Eleventh Circuit did in *Vaughan* and *Morton*.  Plaintiffs were suspected of no crime, and the suspect who had been shooting at Officer Rodriguez was already allegedly leaving the vicinity after unsuccessfully attempting to break into Plaintiffs' car.   Thus, he posed no continuing threat to Officer Rodriguez nor Plaintiffs. Accordingly, Officer Rodriguez had no reasonable basis to shoot at Plaintiffs' idling vehicle, and even less reason to continue shooting at Plaintiffs' vehicle as it fled—actions that exhibited willful and wanton disregard for bystander safety and property and resulted in Williams's gunshot wound, significant property damage to Thompson's vehicle, and the reasonable apprehension of imminent, life-threatening harm to all Plaintiffs.[5]   Finally, Officer Rodriguez issued no warning before he began shooting at Plaintiff's vehicle.   Thus, based on these allegations, the Court has no trouble concluding that "no reasonable police officer would have used deadly force against [Plaintiffs]" under the factual circumstances alleged here.  *See Morton*, 707 F.3d at 1279; *Gregory v. Miami-Dade Cnty., Fla.*, 719 F. App'x 859, 869 (11th Cir. 2017) ("The law was clearly established as of

---

[5]  The Court acknowledges the Eleventh Circuit's admonition that "[t]he general principle of law must be specific enough to give the officers notice of the clearly established right" and has warned that "the principle that officers may not use excessive force to apprehend a suspect is too broad a concept to give officers notice of unacceptable conduct."  *Mercado*, 407 F.3d at 1159 (citing *Jones v. City of Dothan,* 121 F.3d 1456, 1460 (11th Cir. 1997)).  With that said, the alleged facts here—coupled with the Eleventh Circuit's specific application of *Garner* in both *Vaughan* and *Morton*—compels the unavoidable conclusion that Plaintiffs' Fourth Amendment right to be free from an officer's use of excessive force in this context was clearly established.  These prior Supreme Court and Eleventh Circuit precedents are sufficiently specific for the Court to conclude that a reasonable police officer would have been on notice that shooting his firearm at Plaintiffs' vehicle was a constitutionally impermissible and unreasonable use of deadly force under the factual circumstances alleged in the Complaint.

May 28, 2012 that shooting a non-resisting suspect who has done nothing threatening and thus posed no immediate danger violates the Fourth Amendment right to be free from the use of excessive force.").

In sum, Officer Rodriguez's qualified immunity defense fails at the pleading stage. However, should discovery reveal additional countervailing facts undermining the allegations in the Complaint, the Court will renew its consideration of Officer Rodriguez's qualified immunity defense at summary judgment.

### II. Counts II & III – State Law Tort Claims

In Counts II and III, Plaintiffs bring separate tort claims under Florida law. Count II appears to advance either a general-negligence or a negligent-use-of-excessive-force claim against Miami-Dade County only. Count III advances an assault-and-battery claim against Defendant Miami-Dade County only. As a preliminary matter, the Court notes that the Complaint fails to properly plead Counts II and III in the alternative. As to Count II specifically, the Complaint fails to state a claim for negligent use of excessive force and/or general negligence as currently pleaded. Moreover, based upon the allegations in the operative Complaint, sovereign immunity shields Miami-Dade County from liability on Counts II and III. Accordingly, both Counts warrant dismissal with leave to amend as explained below.

#### A. Sovereign Immunity Bars Counts II & III as Currently Pleaded

Defendant Miami-Dade County argues that Plaintiffs' state law claims (Counts II & III) must be dismissed based upon the County's sovereign immunity. County MTD at 4–7. Plaintiffs argue in response that the County's sovereign immunity argument is premature to resolve on the pleadings since complex fact issues persist as to Officer Rodriguez's state of mind and that "force that is deemed excessive under § 1983 is not necessarily synonymous with force that is done with 'bad faith, malicious purpose, or wanton [and] willful disregard of human rights [or] safety' as

those terms are used in section 768.28(9)(a)."  Resp. at 9–12 (citing *Rice v. Fla. Dep't of Corr.*, No. 3:20-CV-1206-BJD-PDB, 2023 WL 3645606, at *5 (M.D. Fla. May 25, 2023)).

Sovereign immunity provides that the County, as a political subdivision of the State of Florida, is immune from suit except where the State has given its consent to be sued.  *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1234–35 (S.D. Fla. 2007) (citing *Cauley v. City of Jacksonville,* 403 So. 2d 379, 381 (Fla. 1981)).  In 1973, the State of Florida gave its consent to be sued in tort actions through the enactment of § 768.28 of the Florida Statutes.  *Id.*  And "[i]n Florida, sovereign immunity is the rule, rather than the exception."  *Strong v. City of Naples*, No. 2:22-CV-318-KCD, 2022 WL 14029702, at *1 (M.D. Fla. Oct. 24, 2022) (quoting *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984)).

Florida has, however, waived its sovereign immunity from liability for torts "only to the extent specified in this [statute]."  *Id.* (quoting Fla. Stat. § 768.28(1) (2024)).  Accordingly, § 768.28(1) establishes the "limitations to suits against the State of Florida and its political subdivisions, such as Miami–Dade County."  *Id.*  One such limitation is that, in any case involving alleged torts committed by a county employee, either the county or the employee can be held liable, but not both.  *See McGhee v. Volusia County,* 679 So. 2d 729, 733 (Fla. 1996) ("In any given situation either the agency can be held liable under Florida law, or the employee, but not both"); Fla. Stat. § 768.28(1) & (9)(a).

Another such limitation is that, where injury or damages have been suffered as a result of an employee's torts, the State and its political subdivisions may be held liable for those acts, "unless 'such [an] act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'"  *Moore*, 502 F. Supp. 2d at 1235 (quoting Fla. Stat. § 768.28(9)(a)); *see also McGhee,* 679 So. 2d at 733. Specifically, § 768.28(9)(a) provides:

> *The state or its subdivisions are not liable in tort for the acts or omissions of an officer*, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose *or in a manner exhibiting wanton and willful disregard of human rights, safety, or property*.

Fla. Stat. § 768.28(9)(a) (2024) (emphasis added). Accordingly, Florida courts have held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property. *See, e.g.*, *City of Ft. Lauderdale v. Todaro,* 632 So. 2d 655, 656–58 (Fla. 4th DCA 1994) (reversing verdict against city where jury found employee acted with willful disregard for safety); *Willis v. Dade County Sch. Bd.,* 411 So. 2d 245, 246 (Fla. 3d DCA 1982) (affirming trial court's dismissal of complaint that alleged "malicious" assault and battery). Courts in this district have similarly dismissed state law claims based upon sovereign immunity where a plaintiff attempted to hold a municipality liable for conduct that was "wanton and willful," irrespective of whether those exact terms were used in the pleadings. *See, e.g.*, *Jones v. City of Palm Beach Gardens*, No. 16-81247, 2022 WL 2191689, at *3–4 (S.D. Fla. June 17, 2022); *Montefu Acosta v. Miami-Dade Cnty.*, No. 16-23241, ECF No. 37, at 10–11 (S.D. Fla. Sept. 8, 2020).

Finally, "sovereign immunity can be decided as a matter of law when the facts compel that outcome." *Strong v. City of Naples*, No. 2:22-CV-318-KCD, 2022 WL 14029702, at *2 (M.D. Fla. Oct. 24, 2022) (citing *Terry v. Rodriguez*, No. 09-23726, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010)). "[P]laintiffs may use alternative pleading to bring suit against both a government entity and an individual employee, but, if the factual allegations can occur only from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails under § 768.28." *Gregory*, 719 F. App'x at 873.

Turning to the Complaint, the Court notes as a threshold matter that Plaintiffs have incorporated into each of their state law claims against the County all the general allegations

contained in paragraphs 1–47 of the Complaint.  And as the County correctly notes, County MTD at 5–6, especially problematic for Plaintiffs' argument in opposition to sovereign immunity is the Complaint's inclusion of the following allegations within Counts II and III:

> The Assailant had already removed himself from the immediate vicinity of Plaintiffs' Vehicle before Officer Rodriguez began shooting in the direction of Plaintiffs' Vehicle and into Plaintiffs' occupied vehicle. . .
>
> Even though Officer Rodriguez knew or should have known that Plaintiffs' Vehicle was occupied by innocent civilians, including because it was stopped in a restaurant drive through, Officer Rodriguez nonetheless began shooting at and into Plaintiffs' Vehicle. . .
>
> As Plaintiff Thompsons's vehicle was fleeing and posed no threat to Officer Rodriguez, Officer Rodriguez continued to fire upon Plaintiffs' Vehicle. . .
>
> As Plaintiff Thompson drove Plaintiffs' Vehicle southbound and away from Officer Rodriguez, Officer Rodriguez still continued to fire his gun upon Plaintiffs and Plaintiffs' Vehicle. . .
>
> Officer Rodriguez continued to shoot at Plaintiffs and Plaintiffs' Vehicle even after the vehicle passed away from Officer Rodriguez and even as the vehicle continued to flee away from Officer Rodriguez's position. . .
>
> And, as Plaintiffs' Vehicle continued to flee southbound and continued to flee away from Officer Rodriguez's position, Officer Rodriguez continued shooting, and shot Plaintiff Williams in the back and left shoulder. . .
>
> Officer Rodriguez's aiming at Plaintiffs and Plaintiffs' Vehicle even as Plaintiffs and their vehicle continued to flee from his position by driving further and further away from Officer Rodriguez's position confirms that Officer Rodriguez shot into Plaintiffs' Vehicle and at Plaintiffs even when they did not pose any threat to Officer Rodriguez. . .

Compl. ¶¶ 12; 29; 31; 33; 35; 36; 39.

Although Federal Rule of Civil Procedure 8(d)(2) allows Plaintiffs to plead in the alternative, "courts have also recognized the limits to a plaintiff's ability to advance 'alternative'

theories in § 768.28 cases where the factual allegations can only suggest malice or bad faith on the part of the individual defendant." *Gregory*, 86 F. Supp. 3d at 1337 (quoting *Terry*, 2010 WL 2342382, at *2). While "[n]o specific words or formulae are required to plead in the alternative, [] plaintiffs 'must use a formulation from which it can be reasonably inferred' that they are pleading in the alternative." *Ashley v. City of Hialeah*, No. 11-20490, 2011 WL 3236051, at *3 (S.D. Fla. July 28, 2011) (quoting *Holman v. Indiana,* 211 F.3d 399, 407 (7th Cir. 2000)); *see also Gregory*, 719 F. App'x at 874 ("We are not saying that plaintiffs cannot plead in the alternative in these types of case[s.]").

Here, Plaintiffs have failed to properly plead in the alternative by incorporating the above-mentioned general factual allegations into each of their claims against the County. *See Gregory*, 86 F. Supp. 3d at 1337. And because *all* of the allegations contained in paragraphs 1–47 are incorporated into Counts I, II, and III, the Court cannot construe either Count II or III to be a properly pleaded alternative, hypothetical, or inconsistent pleading as permitted by Rule 8(d). *See Gregory*, 86 F. Supp. 3d at 1337. Nowhere in the four corners of the Complaint do Plaintiffs indicate any intention to plead in the alternative—and the Court is unable to reasonably infer from the allegations that Plaintiffs intended to do so. And to the extent Plaintiffs rely on their Response to suggest they were intending to plead in the alternative, *see* Resp. at 10–11, "Plaintiff[s] may not amend [their] complaint through a response to a motion to dismiss." *Watkins v. Six Unknown Broward Sherriff Jail Deputies*, No. 14-62095, 2015 WL 13203924, at *2 (S.D. Fla. Dec. 2, 2015) (citing *Huls v. Llabona*, 437 F. App'x 830, 831 n.5 (11th Cir. 2011)).

Given Plaintiffs' failure to properly plead in the alternative, the Court has no choice but to read the allegations contained in paragraphs 1–47 as part of Counts II and III. Upon doing so and accepting those allegations as true—as the Court must at this stage—the Court concludes that Plaintiffs' allegations in paragraphs 1–47 "connote conduct much more reprehensible and

unacceptable than mere intentional conduct and can only be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *Gregory*, 719 F. App'x at 874.  In other words, "no version of the facts pled in this particular case support a claim that Officer [Rodriguez] acted without wanton and willful disregard of [Plaintiffs'] rights." *See id*.; *see also Jones*, 2022 WL 2191689, at *3 (dismissing state law claims against county on sovereign immunity grounds and holding plaintiff's allegations could only be characterized as acts that fell within Fla. Stat. § 768.28(9)(a)); *Dukes v. Miami-Dade Cnty.*, No. 05-22665, 2006 WL 8433284, at *2 (S.D. Fla. July 10, 2006) (same).

Plaintiffs argue that whether Officer Rodriguez's actions were "wanton and willful" pursuant to § 768.28(9)(a) is a fact issue premature to resolve at the dismissal stage. *See* Resp. at 9–12.  But the specific allegations included within Counts II and III indicate that Officer Rodriguez's conduct exhibited precisely the kind of wanton and willful disregard of human rights, safety, or property that § 768.28(9)(a) contemplates.  And while the Court acknowledges Plaintiffs' proviso that "force that is deemed excessive under § 1983 is not necessarily synonymous with force that is done with 'bad faith, malicious purpose, or wanton [and] willful disregard of human rights [or] safety' as those terms are used in section 768.28(9)(a)," *Rice*, 2023 WL 3645606, at *5, given the facts in the Complaint, such a conclusion is unavoidable here.

Finally, to the extent Plaintiffs seek to argue it is improper for the Court to decide whether sovereign immunity shields the County from liability based upon the Complaint alone, the Eleventh Circuit unequivocally permits this practice.  *LeFrere v. Quezada,* 582 F.3d 1260, 1263 (11th Cir. 2009) ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."); *Gregory*, 719 F. App'x at 874 (agreeing with the district court that "the allegations incorporated against the County connote conduct much more reprehensible and unacceptable than mere intentional conduct and can only

be characterized as stating claims for acts done in bad faith or in a willful and wanton manner" and affirming district court's dismissal of state law claims against the county on sovereign immunity grounds). The Court may accordingly consider the County's sovereign immunity defense at the pleading stage.

In summary, the Court concludes that, based upon the facts alleged in the operative Complaint, § 768.28(9)(a) of the Florida Statutes applies to the allegations concerning Officer Rodriguez's conduct. As a result, sovereign immunity shields the County from liability on Counts II and III, which are both ***dismissed without prejudice and with leave to amend***. Subsequent amendment will need to plead specific facts substantiating Plaintiffs' state law claims and make clear where Plaintiffs attempt to plead in the alternative. Plaintiffs are further advised that substantive alterations to the Complaint's allegations will likely require renewed analysis with respect to Count I, since as currently pleaded, the allegations adduced in support of Counts I, II, and III are all materially intertwined.

### B. Count II Fails to State a Claim as Currently Pleaded

The County separately argues that Count II should be dismissed for failure to state a claim. County MTD at 3–4. Although the Court has already dismissed Counts II and III on sovereign immunity grounds as discussed above, the Court finds it proper to address the County's alternative argument for dismissing Count II, since it is material to any contemplated, future amended complaint that Plaintiffs may choose to bring.

For starters, it is unclear whether Plaintiffs intended to plead Count II as a general-negligence claim or a negligent-use-of-excessive-force claim. Plaintiffs apparently disagree with the County as to the proper characterization of Count II. *Compare* County MTD at 3–4; County Reply at 5–7 *with* Resp. at 12–13. Plaintiffs maintain that Count II is a properly pleaded general-negligence claim. Resp. at 12–13. The County, on the other hand, characterizes Count II as an

incognizable negligent-use-of-excessive-force claim and argues in the alternative that the Complaint's apparent allegations of willful disregard for human safety and property on the part of Officer Rodriguez preclude a general-negligence claim. *See* County MTD at 3–4; County Reply at 5–7. As discussed below, under either possible construction, the County is correct that Count II fails to state a claim as currently pleaded.

"Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)); *see also Casado v. Miami-Dade Cnty., et al.,* 340 F. Supp. 3d 1320, 1331 (11th Cir. 2018); *Lewis*, 561 F.3d at 1294. Thus, to the extent that Plaintiffs seek to state a claim for negligent use of excessive force, such a cause of action is incognizable under Florida law and must be dismissed. *See, e.g., Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) ("Florida courts recognize battery, assault, and false imprisonment as intentional torts . . . [and] it is improper to state a claim for negligence premised solely on the defendant's alleged commission of an intentional tort."); *Est. of Osorio v. Miami-Dade Cnty.*, 191 F. Supp. 3d 1366, 1369 (S.D. Fla. 2016) ("Because an officer's use of excessive force is necessarily considered an intentional tort, it cannot, therefore, be 'negligent' because it is impossible to negligently commit an intentional tort.").

Alternatively, under Plaintiffs preferred general-negligence construction, Count II also fails to state a claim as currently pleaded. As discussed above, under the factual scenario set forth in paragraphs 1–47, which Plaintiffs have incorporated within Count II, *see* Compl ¶ 60, Plaintiffs' allegations all but require the Court to draw the reasonable inference that Officer Rodriguez acted in a "willful and wanton" manner—even though these exact words are not specifically used in the Complaint. Indeed, these allegations form the basis of the Court's earlier conclusion that Plaintiffs

have properly stated an excessive force claim under § 1983 and overcome Office Rodriguez's qualified immunity at the pleading stage.  Thus, while alternative pleading in this context is permitted, Plaintiffs have incorporated facts within Count II that are factually incongruent and logically inconsistent with a general-negligence theory.  Moreover, Plaintiffs have failed to plead any additional, supporting facts substantiating the "plausible circumstances where [Officer Rodriguez's] decision to shoot at and into Plaintiff[s]' parked car could result in the County's liability for negligence."  *See* Resp. at 12.

In their Response, Plaintiffs note that "force that is deemed excessive under § 1983 is not necessarily synonymous with force that is done with 'bad faith, malicious purpose, or wanton [and] willful disregard of human rights [or] safety' as those terms are used in section 768.28(9)(a)." Resp. at 12 (citing *Rice*, 2023 WL 3645606, at *5).  But this principle, while correctly distilled from *Rice*, is inapplicable here.  In *Rice*—unlike here—the plaintiff did not incorporate into her negligence claim against the Florida Department of Corrections allegations that the individual defendant officers acted "maliciously, sadistically, and deliberately."  2023 WL 3645606, at *5. Thus, the court in *Rice* concluded that plaintiff had adequately alleged a negligence claim in the alternative to a § 1983 excessive-force claim because "the claims alleged in Counts I and II are not internally inconsistent or factually incongruent."  *Id.*

Here on the other hand, Plaintiffs have specifically incorporated within Count II each of the allegations upon which their excessive-force claim rests.  Accordingly, Count II is factually incongruent and internally inconsistent with Count I.  And although case law is clear that the kind of excessive force required to sustain a § 1983 claim is not necessarily synonymous with the "wanton and willful" conduct sufficient to trigger Fla Stat. § 768.28(9)(a), *Rice*, 2023 WL 3645606, at *5, the allegations here nonetheless indicate Officer Rodriguez *did* act with wanton and willful disregard of Plaintiffs' rights.  *See Gregory*, 719 F. App'x at 874; *Jones*, 2022 WL

2191689, at *3; *Dukes*, 2006 WL 8433284, at *2.  In sum, to the extent Count II aims to state a general-negligence claim, it is dismissed *without prejudice and with leave to amend*.

## CONCLUSION

Based on the foregoing analysis, the County's MTD, [ECF No. 15], is **GRANTED** and Officer Rodriguez's MTD, [ECF No. 13], is **DENIED** as follows:

1. Counts II and III are hereby **DISMISSED WITHOUT PREJUDICE**

    *and with leave to amend*.

2. Plaintiffs shall file an Amended Complaint in compliance with this

    Order on or before **July 24, 2024**.[6]

**DONE AND ORDERED** in Miami, Florida, this 13th day of July, 2024.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[6]  In the event Plaintiffs seek to maintain a claim against the County, the Court notes that as currently pleaded, a general-negligence claim may nevertheless trigger sovereign immunity given the allegations of willful-and-wanton conduct by Officer Rodriguez.  Thus, while Plaintiffs may plead in the alternative, they are cautioned that failure to properly distinguish the basis of their § 1983 claim from their theory of general negligence could result in the same factual inconsistency described above and warrant dismissal with prejudice of the County as a party to this suit.