UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24530-RAR

**SHANIECE WILLIAMS**, *et al.*,

    Plaintiffs,

v.

**MIAMI-DADE COUNTY**, *et al.*,

    Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Miami-Dade County's Motion to Dismiss Counts II and III of the Amended Complaint ("Motion"), [ECF No. 43], filed on August 8, 2024.[1] Having considered Defendant's Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 43], is **DENIED** for the reasons stated herein.

## BACKGROUND

**I. Factual Background**

On December 4, 2019, Shaniece Williams, William Allen, and Sherry Thompson entered the drive-through at Wings on Fire in Miami, Florida. Am. Compl. ¶¶ 12–14. While their vehicle was stopped in the drive-through lane, someone approached their vehicle and tried to enter it but was unable to. Am. Compl. ¶¶ 16, 25. That person was being pursued by Defendant Officer Rodriguez, who had attempted a traffic stop of the person on a motorized scooter. Am. Compl. ¶

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Pl.'s Opp'n to Def. Miami-Dade Cnty.'s Mot. to Dismiss Counts II and III of the Am. Compl., [ECF No. 45]; Miami-Dade Cnty.'s Reply in Supp. of its Mot. to Dismiss Counts II and III of the Am. Compl., [ECF No. 9].

17. During the attempted traffic stop, the scooter driver and Officer Rodriguez began shooting at each other. Am. Compl. ¶ 18. While the scooter driver was attempting to enter Plaintiff's vehicle, Officer Rodriguez shot at the vehicle. Am. Compl. ¶ 26.

Thompson, who was driving the vehicle, drove out of the restaurant's drive-through and onto the road. Am. Compl. ¶ 30. Officer Rodriguez shot his gun multiple times toward Plaintiff Thompson's vehicle, knocking out the back window, causing shattered glass to fall on Allen, shooting Williams in the back and left shoulder, and causing all Plaintiffs to fear for their lives. Am. Compl. ¶¶ 31–38.

Once Plaintiffs were no longer being shot at by Officer Rodriguez, they stopped the vehicle to seek emergency assistance. Am. Compl. ¶ 41. Upon arrival, the police detained and handcuffed Allen. Am. Compl. ¶ 42. Williams received treatment at the hospital for the gunshot wounds from the incident. Am. Compl. ¶ 43.

## II. Procedural Background

On November 30, 2023, Plaintiffs filed their original complaint in this action. *See* [ECF No. 1]. That complaint named both Officer Rodriguez and Miami-Dade County as defendants and asserted three counts: one against Office Rodriguez for excessive use of force under 42 U.S.C. § 1983 (Count I), and two against Miami-Dade County for negligence (Count II) and assault and battery (Count III) pursuant to Fla. Stat. § 768.28. [ECF No. 1] ¶¶ 53, 62, 70. Defendants then each filed Motions to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). [ECF Nos. 13, 15].

The Court denied Officer Rodriguez's Motion to Dismiss, [ECF No. 13], and granted the County's Motion to Dismiss, [ECF No. 15], without prejudice and with leave to amend. [ECF No. 37]. The Court granted the County's Motion to Dismiss the original complaint on the grounds that Plaintiffs failed to properly plead in the alternative as to Counts II and III; failed to state a claim

as to Count II; and that, as pleaded, sovereign immunity barred Counts II and III. *See* [ECF No. 37] at 22.

### III. Amended Complaint and Renewed Motion to Dismiss

Plaintiffs filed their Amended Complaint, [ECF No. 39], on July 24, 2024, and the County filed a renewed Motion to Dismiss—the operative motion here—on August 8, 2024. [ECF No. 43]. In their Amended Complaint, Plaintiffs emphasize that Counts II and III against the County are pleaded in the alternative. Am. Compl. ¶¶ 60, 75.

The County moves to dismiss Counts II and III of Plaintiff's Amended Complaint with prejudice. Mot. at 1. The County asserts that sovereign immunity bars both counts, *see* Mot. at 2–3; that Count II fails to state a claim, *see* Mot. at 6–8; and that Count III violates pleading rules because it is a shotgun pleading, *see* Mot. at 8–9. The County primarily asserts that the facts, as alleged, can only be read to show a "wanton and willful disregard for human rights and safety," which would preclude suit against the County based on sovereign immunity. Mot. at 5–6. The County also avers that Plaintiffs are *really* alleging negligent use of excessive force in Count II, which Florida law does not allow, *see* Mot. at 7, and that incorporation of preceding paragraphs into Count III renders the Amended Complaint a shotgun pleading, *see* Mot. at 8.

In response, Plaintiffs argue that the County's Motion asks the Court to accept the County's versions of events—which the Court may not do at this stage—and that the County fails to acknowledge Plaintiff's alternative pleading. Resp. at 3–4. Plaintiffs further allege that they've remedied their previous failure to state a claim as to Count II by clearly stating it is being pleaded in the alternative and highlighting that sovereign immunity—which hinges on Officer Rodriguez's intent in this case —is a fact question that should not be decided at this stage. Resp. at 7–9. Finally, Plaintiffs note that incorporation within a complaint does not inherently result in a shotgun

pleading; rather, pleading rules require that a complaint "adequately put [the County on] notice of the claims against it"—as the Amended Complaint does. Resp. at 10.

In Reply, the County declares the Amended Complaint "makes little sense and so the County is trying to decipher it." Reply at 2. The County is certain that the facts as pled cannot make sense, even if alternatively pled—and raise a new argument as to how the facts cannot make sense. Reply at 2–4. Finally, the County claims that, because "the current complaint remains unwieldy and unnecessarily confusing," it violates pleading standards. Reply at 5–6.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim," but a complaint must set forth more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). The "court must limit its consideration to the pleadings and exhibits attached to the pleadings." *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319, 2013 WL 6229142, at *1 (S.D. Fla. Dec. 2, 2013) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)).

A claim to relief is plausible where the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The requirement that a claim be plausible does not require that it be probable, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

Lastly, "Federal Rule of Civil Procedure 8(e) allows a plaintiff to plead in the alternative and note that separate counts of the complaint must be read separately." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277–78 (11th Cir. 2006).

## ANALYSIS

As is required at this stage, all inferences are drawn in favor of Plaintiffs and all well-pleaded allegations are considered truthful. Only Counts II and III against the County are at issue. The Court first addresses the County's assertions that Count II fails to state a claim and that Count III violates pleading standards, before moving to the issue of whether sovereign immunity applies.

### I. Count II States a Claim

The County maintains that Count II fails to state a claim because, "under Florida law, there is no such thing as the negligent use of excessive force." Mot. at 6. As the County correctly points out: "Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)).

The issue here is that Plaintiffs' Amended Complaint does not assert that the use of excessive force was *negligently* committed based on the shooting of the gun at the car unaffiliated with the scooter driver. Instead, the Court reads Plaintiffs' Amended Complaint to allege—in the alternative and taking Plaintiffs' assertions as true—a different scenario in which Officer Rodriguez "believed that the Assailant gained entry to Plaintiffs' Vehicle," *see* Am. Compl. ¶ 61, or that "at least one of the occupants of Plaintiffs' Vehicle was an accomplice of the Assailant's

and that such accomplice(s) allowed the Assailant to enter Plaintiffs' Vehicle," *see* Am. Compl. ¶ 62. And "Florida law . . . clearly recognizes a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001); *see also Ratlieff v. City of Fort Lauderdale*, No. 22-61029, 2023 WL 3750581, at *11 (S.D. Fla. June 1, 2023) ("[A] plaintiff may maintain a negligence claim in conjunction with a claim for excessive use of force if the negligence claim "pertain[s] to something other than the actual application of force during the course of the arrest." (quoting *Sanders*, 672 So. 2d at 47)).

Plaintiffs then advance several assertions regarding what was reasonable, which the County posits are comingled theories or contradictory facts. *See* Am. Compl. ¶¶ 61–73; *see also* Mot. at 6–8. But, the Court, taking all inferences in favor of Plaintiffs, reads those assertions as alleging negligence on Officer Rodriguez's part because he acted unreasonably and should have known that the scooter driver did not enter the car and that he should not shoot at the vehicle. *See* Am. Compl. ¶¶ 63–66. Those allegations also speak to what duty Officer Rodriguez owed Plaintiffs and how it was breached. *See* Am. Compl. ¶¶ 69–73. *See also Peterson v. Pollack*, 290 So. 3d 102, 107 (Fla. 4th DCA 2020) (explaining the negligence elements in an officer-involved incident are duty, breach, causation, and damages).

In sum, reading all inferences in favor of Plaintiffs, the Court finds that Count II states a plausible negligence claim.

**II. Count III Does Not Violate Pleading Standards**

The County's assertion that Count III violates pleading standards because it constitutes a shotgun pleading is unavailing. Shotgun pleadings, which often rely on excessive incorporation of preceding paragraphs, have a different tenor than what Plaintiffs allege in Count III. Shotgun pleadings are those that are "calculated to confuse the 'enemy,' and the court, so that theories for

relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.8 (11th Cir. 1985) (Tjoflat, J., dissenting).

Although Plaintiffs' Amended Complaint may not be the most artfully pled, the Court cannot say it is confused or that it is unable to unmask Plaintiffs' theories. And the County's assertion that it is confused and simply unable to parse through Plaintiffs' operative pleading for adequate notice is overstated. As Hamlet's mother Queen Gertrude might say: "The [County] doth protest too much." *See* William Shakespeare, Hamlet Act III, Scene 2 (alteration added); *see also Ghorbani v. Pac. Gas & Elec. Co. Grp. Life Ins.*, 100 F. Supp. 2d 1165, 1168 (N.D. Cal. 2000) ("To the contrary, the strenuousness with which a defendant objects to a plaintiff's claim might legitimately be regarded as a sign that a case has merit. As Gertrude's observation to Hamlet reveals, suspicions are rightly fueled by one who 'doth protest too much.'").

There are many ways that a complaint can qualify as a shotgun pleading, but "the unifying characteristic of shotgun pleadings is that they fail to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Grant v. Sheriff of Okeechobee Cnty.*, No. 22-11820, 2023 WL 2416262, at *2 (11th Cir. Mar. 9, 2023). The Court reads Plaintiffs' third count to incorporate previously alleged facts underpinning the assertion that "Defendant Officer Rodriguez committed torts of assault and battery while acting within the course and scope of his employment and as an employee and agent of Defendant Miami-Dade County," and subsequently, that the County therefore plausibly bears legal responsibility. Am. Compl. ¶¶ 76–77. Moreover, Plaintiffs then allege that Officer Rodriguez's use of "unnecessary, inappropriate, and excessive force" while shooting and acting in his official capacity undergirds the assault and battery claim. Am. Compl. ¶¶ 78–80.

Next, Plaintiffs state that they feared for their lives while being shot at, and that Officer Rodriguez intended to cause bodily harm/offensive contact by shooting at Plaintiffs. Am. Compl. ¶¶ 82–84. Under Florida Law, "[t]he statutory elements of battery are: an actual and intentional touching or striking of another person against the will of the other person; or intentionally causing bodily harm to an individual"—as such, it is unclear what more the County needs to understand Plaintiffs' theory of liability. *Sosa-Martinez v. U.S. Atty. Gen.*, 420 F.3d 1338, 1341 (11th Cir. 2005) (quoting *Hamrick v. State*, 648 So. 2d 274, 276 (Fla. 4th DCA 1995) (emphasis omitted)). *Cf. Hunt v. Nationstar Mortg., LLC*, 684 F. App'x 938, 943–44 (11th Cir. 2017) ("Such pleadings make 'it [] *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'") (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)) (emphasis added).

All in all, Count III satisfies pleading requirements as it provides adequate notice to the County regarding Plaintiffs' alternative theories of liability.

### III. Sovereign Immunity

In Florida, the law of sovereign immunity states that:

> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a); *see also McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996) ("The employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess, [] or if there is not even a pretense of lawful right in the performance of the acts.").

The statute divides the interests of the employee and the County: if Officer Rodriguez acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of

human rights, safety, or property," the County is immune from liability. However, if he did not commit his actions in bad faith, with malicious purpose, or wantonly and willfully, the County is not immune from suit. *See Butler v. Gualtieri*, 41 F.4th 1329, 1339 (11th Cir. 2022) ("Florida's sovereign immunity statute protects government officials when their subordinates act in bad faith, or with malicious purpose, or a wanton and willful disregard of human rights or safety."); *see also Taylor v. Sheriff, Pinellas Cnty., Fla.*, No. 23-10538, 2023 WL 8368843, at *3 (11th Cir. Dec. 4, 2023) ("Thus it is clear that the officer's subjective intent is key in determining the availability of sovereign immunity."). In essence, "for the [County] to be immune under § 768.28(9), we must be convinced that the Officer Defendants '[were] acting in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Purcell v. City of Fort Lauderdale*, No. 21-61006, 2024 WL 4489527, at *28 (S.D. Fla. Oct. 15, 2024) (quoting *HTNB Corp. v. Milstead*, 369 So. 3d 739, 754 (Fla. 3d DCA 2023)); *Thompson v. Douds*, 852 So. 2d 299, 306 (Fla. 2d DCA 2003) ("Thus, while '[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force,' neither will 'an officer's good intentions make an objectively unreasonable use of force constitutional.'" (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). As such, the County's assertion of sovereign immunity rises and falls with Officer Rodriguez's intent.

Accordingly, the County argues that Officer Rodriguez's actions *can only* be read as wanton and willful. Reply at 4 ("The County's argument is solely that the facts alleged in this case—which accuse Sgt. Rodriguez of having shot at a vehicle full of innocent bystanders who posed no threat to him—connote willful disregard for human safety."). The County's argument hinges on the assertion that: "Repeatedly shooting law-abiding citizens who present no threat to the police or other civilians is wanton conduct exhibiting a willful disregard for human safety." Mot. at 5. This may be true, but it fails to acknowledge Plaintiffs' alternative pleading, which

must be read separately. *See, e.g.*, *Rice v. Fla. Dep't of Corr.*, No. 20-1206, 2023 WL 3645606, at *4 (M.D. Fla. May 25, 2023) ("Although the agency and employee cannot both be held liable under [§] 768.28, a plaintiff may plead her claims in the alternative."); *Strong v. City of Naples*, No. 22-318, 2022 WL 14029702, at *2 (M.D. Fla. Oct. 24, 2022) ("When a plaintiff pleads claims in the alternative, as here, they are read separately."). And as explained above, the Court reads Plaintiffs' Counts against the County as alleging an alternative in which Officer Rodriguez was not using excessive force, but rather negligently and unreasonably believed the vehicle was affiliated with the scooter driver.

There is notable space here between each theory as it relates to Officer Rodriguez's state of mind. "To avoid liability, there must be conduct much more reprehensible and unacceptable than a mere intentional tort." *Duyser by Duyser v. Sch. Bd. of Broward Cnty.*, 573 So. 2d 130, 131 (Fla. 4th DCA 1991). There is the possibility of negligence, or an intentional tort, or the more reprehensible and unacceptable conduct. *See, e.g.*, *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1315 (M.D. Fla. 2010) ("Clearly, under § 768.28(9)(a), if the jury accepts the version proffered by the plaintiff, the conduct would be malicious or wanton and the [County] would not be liable for it . . . Conceivably, the jury could find some middle ground that would amount to battery, but not malicious or wanton conduct."). At this stage, it is difficult—if not impossible—to determine where Officer Rodriguez falls on this spectrum of culpability. And without knowing more about what Officer Rodriguez intended, the Court cannot say the County is immune.

The County cites *Gregory v. Miami-Dade County*, 719 F. App'x 859, 873 (11th Cir. 2017), for the proposition that, "[i]f, at the pleading stage, 'the factual allegations can occur only from bad faith or malicious or wanton and willful conduct,' as they do here, 'then the claim against the government entity fails.'" Reply at 4 (quoting *Gregory*, 719 F. App'x at 873). And although the County recognizes that "occasionally a municipality's entitlement to sovereign immunity cannot

be decided at the motion to dismiss stage[,]" Reply at 4, they suggest that the Amended Complaint here presents a scenario where sovereign immunity clearly applies—pointing to the Court's prior point that the doctrine of sovereign immunity can be triggered at the pleading stage. *See* [ECF No. 37] at 27.

There are two issues with this argument. First, despite the County's implication that the Court's previous Order controls, Plaintiffs have amended their operative complaint. "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 (11th Cir. 1982); *see also Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (explaining that "once the amended complaint was accepted by the district court, the original complaint was superceded"). And, as explained above, the Amended Complaint has now clarified Plaintiff's alternative theories of liability pursuant to the Court's prior Order, such that it is no longer the case that the "factual allegations can occur *only* from bad faith or malicious or wanton and willful conduct." *Gregory*, 719 F. App'x at 873 (emphasis added). Plaintiffs have now adequately and alternatively pleaded three theories of intent.

The second issue is that more recent, *binding* Eleventh Circuit case law minimizes the relevance of the previous, non-precedential case on which the County relies. In *Butler v. Gualtieri*, the Eleventh Circuit addressed the issue of what is required under Florida law to merit sovereign immunity at summary judgment. 41 F.4th at 1332. Neither party cites this case, despite its analytical similarity and precedential nature.

In *Butler*, the Plaintiff's arm was broken when an officer pushed her onto a concrete floor while she was handcuffed. *Id.* at 1332. The Plaintiff brought two § 1983 counts of excessive force in violation of the Fourth and Fourteenth Amendments against the officer in her individual

capacity, and three counts against the sheriff for state law battery and negligence, and excessive force pursuant to § 1983 in his official capacity. *Id.* at 1334. Only the state law battery claim against the sheriff in his official capacity was at issue in the appeal. *Id.* The Court noted the "counterintuitive positions" adopted by the parties: "[Officer] Gee's victim Butler now minimizes [Officer] Gee's aggression, while [Officer] Gee's former boss, Sheriff Gualtieri, emphasizes the extreme nature of her conduct." *Id.* at 1336. The Court then detailed how Florida courts had defined each of the *mens rea* terms ("in bad faith," "with malicious purpose," or "in a manner exhibiting wanton and willful disregard of human rights, safety, or property") and walked through several Florida cases "[i]n exploring further the contours of these exceptions to sovereign immunity." *Id.* at 1337.

That exploration "highlight[ed] the fact-specific nature of these sovereign immunity determinations" and led the Court to conclude that sovereign immunity could not be resolved on summary judgment. *Id.* The Court explained: "Because the standards for applying sovereign immunity are so closely bound up with [Officer] Gee's mental state, on this disputed record, summary judgment is barred as a matter of law." *Id.* at 1339. The Court went further:

> If Florida's courts have refused to find wanton and willful conduct, as a matter of law, when a police officer grabbed an arrestee by the throat and kicked him, *see McGhee*, 679 So. 2d at 730, or when three officers sat on top of an ill, diabetic man until he went "limp," *see Thompson*, 852 So. 2d at 303, there is little reason to conclude, as a matter of law, that Gee's less violent takedown of a noncompliant arrestee exhibited wanton and willful conduct that would justify the application of sovereign immunity.

*Id.* at 1339–40. And in concluding, the Court re-emphasized the fact-specific nature of an intent inquiry: "It is neither the district court's role nor ours to wade into the remaining factual disputes and make determinations regarding the witnesses' credibility, let alone draw appropriate inferences from the proffered facts. These determinations lie squarely within the province of the

jury." *Id.* at 1340. Nowhere in the opinion does the Court adopt—or even cite—any rule from *Gregory* allowing for a determination of sovereign immunity at the pleading stage.

Accordingly, given that the *Butler* Court declined to find sovereign immunity at summary judgment, this Court is unsure whether sovereign immunity can be granted at the motion to dismiss stage in cases such as this one, where Plaintiffs allege alternative claims that "are so closely bound up" with the officer's mental state. *See id.* at 1339. Moreover, the only on-point case from the Eleventh Circuit since *Butler* reached a similar conclusion—also at summary judgment. *See Taylor*, 2023 WL 8368843, at *1, 5 (affirming the district court's denial of "the Sheriff's motion for summary judgment based on sovereign immunity with respect to Taylor's claim for false arrest based on battery on an officer"). There, the Eleventh Circuit explained that the issue on appeal—"whether the district court erred in denying the Sheriff's motion for summary judgment based on sovereign immunity with respect to Taylor's claim for false arrest based on battery on an officer"—"resolve[d] into" a question of "whether the summary judgment evidence is such that a reasonable jury would be required, as a matter of law, to find that [the officer] . . . acted in bad faith or with malicious purpose or with wanton and willful disregard of human rights, safety, or property." *Id.* at *2. Even though there was a video of the interaction between the plaintiff and the officer, "[n]either the videos nor [the plaintiff's] recitation of what actually happened answer the question of what [the officer] thought he felt." *Id.* at *3.

As Florida courts instruct: "[I]n determining whether a state employee or agent is entitled to summary judgment on [§] 768.28(9)(a) immunity, the question is whether a reasonable trier of fact could possibly conclude that the conduct would fall within the exceptions to the statute." *Peterson*, 290 So. 3d at 109. *See, e.g.*, *Berry v. McGowan*, 743 F. App'x 321, 326 (11th Cir. 2018) ("Under Florida law, the question of whether a deputy acted in bad faith, maliciously, or with wanton and willful disregard for the rights of an arrestee is a question of fact for the jury." (citing

*McGhee*, 679 So.2d at 733)).  Because intent is a factual question—one that is quite difficult to assess at the pleading stage—the Court declines to wade into the province of the jury and rejects the County's assertion that it is immune from suit at this juncture.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion, [ECF No. 43], is **DENIED**.  Defendant shall file an answer to Plaintiff's Amended Complaint, [ECF No. 39], within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 6th day of November, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**